UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AIR LIQUIDE AMERICA L.P., | ) | |
|     Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1044-LJM-WTL |
| | ) | |
| INDEPENDENT WELDING DISTRIBUTOR | ) | |
| COOPERATIVE, INC., | ) | |
|     Defendant/Counterclaim Plaintiff. | ) | |

## ORDER ON COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS

This cause is now before the Court on counterclaim defendant's, Air Liquide America L.P. ("Air Liquide"), Motion to Dismiss counterclaim plaintiff's, Independent Welding Distributor Cooperative, Inc. ("IWDC"), counterclaims for, anticipatory repudiation, and unfair competition.[1] The Court has fully considered parties' arguments and, for the reasons discussed below, **GRANTS in part and DENIES in part** Air Liquide's Motion to Dismiss.

### I. BACKGROUND

The facts, as pled in the Second Amended Answer/Countercomplaint ("Ans./Countercomplaint"), are these:

IWDC is the administrative arm of a not-for-profit cooperative that was formed to obtain competitive prices for products used in the welding industry and to pass on the cost savings to its

---

[1] Air Liquide concedes that IWDC's breach of contract counterclaim is sufficiently pleaded to survive this motion, and instead focuses on IWDC's other two counterclaims. Air Liquide has requested that the Court relieve its obligation to answer the breach of contract counterclaim pending this Motion to Dismiss. The Court ORDERS Air Liquide to file an answer to this counterclaim within ten days from the date of this Order.

approximately 153 member/owners. Ans./Countercomplaint ¶ 34. On or about March 26, 2002, IWDC and Air Liquide's predecessor, MG Industries ("MGI"), entered into a Cooperative Gas Purchase Agreement (the "Agreement"), attached as Exhibit A to the complaint. *Id.* ¶ 36, Compl. Ex. A. Under the Agreement, IWDC's member/owners would purchase welding gases from MGI at stipulated prices for a term of three years from the date each member-owner entered into a separate supply agreement. Ans./Countercomplaint ¶ 36. Under the Agreement, IWDC is responsible for negotiating the prices for the gases sold under the various supply agreements. Compl. Ex. A ¶ 2(a). Further, all invoices for gases sold by MGI to a participating member are to be sent to IWDC for processing. Compl. Ex. A ¶ 3(a). Participating member/owners would then remit payment to IWDC, who in turn would remit payment to MGI. *Id.* Lastly, under the Agreement, IWDC would receive administrative fees from the participating member/owners for processing the invoices. Ans./Countercomplaint ¶ 56.

IWDC and MGI entered into supply agreements with various member/owners. *Id.* ¶ 49. Some of the participating member/owners are: A-OX Welding Supply Co., Ann Arbor Welding Supply, Depke Gas & Welding Supply Gases Plus, Metro Welding Supply Corporation, Modern Supply Co., Scott Gross Co., Sutton-Garten, Wyandotte Welding Supply, Ohio Air Products of Canton, R N Goss Gas Products, Sunox, Union Welding, Urie & Blanton, Weiler Welding Supply, and Welders Supply (collectively, "participating member/owners"). *Id.* ¶ 37.

On or about January 1, 2005, Air Liquide assigned the Agreement and supply agreements to itself from MGI after its acquisition of MGI in 2004. *Id.* ¶ 51.

In September 2005, representatives of Air Liquide sent a letter to some of the participating member/owners of IWDC that purchased from Air Liquide under the Agreement. *Id.* ¶ 44, 61. Air

Liquide instructed the participating member/owners to purchase directly from, and remit payment directly to, Air Liquide instead of remitting payment to IWDC as required by the Agreement. *Id.* ¶ 43. The September 2005, letter assigned the supply agreements from IWDC to Air Liquide. *Id.* ¶ 61.

As a result of the letter and assignment of the supply agreements to Air Liquide, IWDC has stopped receiving invoices from Air Liquide, and has therefore suffered damages because its administrative fees under the Agreement have been greatly decreased. *Id.* ¶¶ 56, 63.

## II. STANDARD

Air Liquide seeks dismissal of IWDC's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief may be granted. The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not to resolve the case on its merits. *See Triad Assoc., Inc. v. Chi. Housing Auth.*, 892 F.2d 585, 586 (7th Cir. 1989); 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). Federal courts adhere to a notice pleading regime, and, as such, a plaintiff need not plead facts as long as the defendant has at least minimal notice of the claim or claims being asserted. Fed. R. Civ. P. 8; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

When ruling on a motion to dismiss for failure to state a claim, pursuant to 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them. *See Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994). Dismissal is appropriate only if it appears beyond doubt that plaintiff can prove no set of facts consistent with the allegations in the complaint that would entitle it to relief. *See Hi-Lite*

*Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1405 (7th Cir. 1993). This standard means that if any set of facts, even hypothesized facts, could be proven consistent with the complaint, then the complaint must not be dismissed. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1995).

### III.  DISCUSSION

#### A.  WHETHER OR NOT THE COURT WILL CONSIDER THE SUPPLY AGREEMENT ATTACHED TO THE MOTION TO DISMISS.

As an initial matter, the Court finds that Exhibit A attached to Air Liquide's Motion to Dismiss, an alleged example of a supply agreement, will not be considered for the purposes of this Order. As previously mentioned, a separate supply agreement was executed for each participating member/owners between the member/owner, MGI, and IWDC. In arguing that the sample supply agreement should be considered on this Motion to Dismiss, Air Liquide relies on *Venture Association v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993), and Wright v. Associated Insurance Cos., 29 F.3d 1244, 1248 (7th Cir. 1994).

In *Venture*, the Seventh Circuit held that the district court did not err in denying a motion to exclude. *Venture*, 987 F.2d at 431. In that case, the defendant attached three letters to its motion to dismiss. The letters included a proposed letter of intent and two letters "by which the parties agreed to be bound by [the contract's] terms." *Id.* The letters "constitute[d] the core of the parties contractual relationship." *Id.* In *Wright*, the Seventh Circuit, citing *Venture*, held that the district court did not err in considering the complete, written agreement that was the basis of the plaintiff's claim on the defendant's motion to dismiss. *Wright*, 29 F.3d at 1248. In *Wright*, the agreement that

4

was attached to the motion to dismiss was the contract with which the defendant's allegedly interfered. *Id.*

The supply agreement attached to the Motion to Dismiss is not a copy of an actual agreement between MGI, IWDC, and a participating member/owner. It is merely a sample copy of a supply agreement that may or may not have been executed. The attached copy is neither dated nor executed. Further, according to the Agreement, each supply agreement will differ according to the participating member/owner's requirements for gases: "MGI hereby agrees to sell to each Participating Member such Participating Member's requirements for Products on the terms set forth in the [supply agreement] relating to such Participating Member." Compl. Ex. A ¶ 2(a). The sample supply agreement, therefore, is not the actual agreement that provides the basis of the complaint as in *Wright*, nor does it constitute the core of the parties contractual relationship. Indeed, the sample is not a contract at all. Therefore, the Court finds that attached sample supply agreement is not a part of the pleadings, and thus does not consider the agreement on this Motion to Dismiss.

### B.  ANTICIPATORY REPUDIATION CLAIM

Under Indiana law, the applicable law to this diversity action, the "[r]epudiation of a contract must be positive, absolute, and unconditional in order for it to be treated as an anticipatory breach." *See Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E.2d 905, 910-11 (Ind. Ct. App. 1998) ("*Jay County*") (citing *Eden United, Inc. v. Short*, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991). "Because the doctrine of anticipatory repudiation represents a harsh remedy, the requirement that the repudiating statement be clear and absolute is a strict one." *Angelone v. Change*, 761 N.E.2d 426, 429 (Ind. Ct. App. 2001) (citing *Jay County*, 692 N.E.2d at 911).

5

Air Liquide argues that IWDC's anticipatory repudiation counterclaim is insufficient because "nowhere in the [Ans./Counterclaim] does IWDC state that Air Liquide asserted it would cease to perform under the contract." Pl.'s Br. 5. According to Air Liquide, IWDC never alleges in the Ans./Counterecomplaint that Air Liquide made a statement disavowing future performance under the Agreement. Air Liquide also contends that IWDC has not alleged how Air Liquide repudiated the Agreement, and, without citing to authority, that "Air Liquid's *letter to a third-party* cannot be an unequivocal assertion *to IWDC* that Air Liquide will not perform under the contract in the future." Pl.'s Reply Br. 2 (emphasis in original). Finally, Air Liquide contends that it had a contractual right to require the participating member/owners contact them directly with payments. In sum, Air Liquide argues that IWDC does not sufficiently allege facts to state a claim of anticipatory repudiation as a matter of law. The Court disagrees.

The facts, as pled, show that Air Liquide had a contractual duty under the Agreement to refer all invoices from gas purchases to IWDC so that IWDC could process the payments. Compl. Ex. A ¶ 3(a). IWDC thus had a contractual right to accept and process payments from the participating member/owners to Air Liquide. *Id.* This procedure enabled IWDC to collect administrative fees. Ans./Counterclaim ¶ 56. In 2005, Air Liquide instructed all the participating member/owners "to purchase directly from, and remit payment directly to, Air Liquide instead of remitting payment to IWDC as required by the agreement." *Id.* ¶ 43. The September 2005, letter assigned the supply agreements from IWDC to Air Liquide. *Id.* ¶ 63. These actions effectively destroyed IWDC's rights under the Agreement. Air Liquide stopped sending invoices to IWDC, and IWDC suffered damages by losing administrative fees.

Contrary to Air Liquide's belief, Air Liquid did disavowal its future performance under the

6

Agreement. Air Liquid was required to send invoices to IWDC, effectively using IWDC as a middle man between Air Liquide and the participating member/owners, but decided to cut IWDC out of the picture and deal directly with the participating member/owners, thus disavowing Air Liquide's performance under the Agreement.

Moreover, whether or not the September 2005, letter is capable of being an unequivocal assertion to IWDC that Air Liquide will not perform under the Agreement depends on the day-to-day interaction between IWDC and the participating member/owners. If IWDC is highly involved with the participating member/owners, or if some of the member/owners are highly involved with IWDC and its negotiating efforts, it is likely that IWDC would have knowledge of the letters that effectively destroyed their contractual rights. Ultimately, the level of interaction between IWDC and the participating member/owners is a question of fact that need not be conclusively established for purposes of a motion to dismiss.

Finally, Air Liquide's contention that it has a contractual right to assign the agreements is without merit. For this argument, Air Liquide relies on the sample supply agreement attached to the Motion to Dismiss, which the Court has decided must be disregarded for purposes of this motion; therefore, this argument must fail.

The Court finds that the facts, as pled, sufficiently state a claim upon which relief can be granted under Rule 12(b)(6), and therefore, Air Liquide's Motion to Dismiss as to this counterclaim is **DENIED**.

### C. UNFAIR COMPETITION

In its Ans./Countercomplaint, IWDC alleges that "Air Liquide intentionally and unjustifiably assigned the Agreement and Supply Agreements to itself," and that "Air Liquid's actions were taken for the sole purpose of causing economic injury to the IWDC in an effort to break up the IWDC cooperative." Ans./Countercomplaint ¶¶ 71, 73. IWDC alleges it suffered damages from lost administrative fees as a result of these actions. The Court finds that these factual allegations are not sufficient to state a claim for unfair competition under Indiana law, and therefore this counterclaim must be dismiss pursuant to Rule 12(b)(6).

Indiana courts have recognized multiple activities that constitute unfair competition, including: price cutting, *see Bartholemew County Beverage Co. v. Barco Beverage Corp.*, 524 N.E.2d 353, 358 (Ind. Ct. App. 1988); a situation where one entity passes off another entity's image or product as its own, *see Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001), *see also Hammons Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.*, 501 N.E.2d 458, 460-62 (Ind. Ct. App. 1988); or in the insurance industry context, *see* Ind. Code § 27-4-1-1 (2003).

In support of its counterclaim, IWDC quotes the following passage from *Felsher*:

> Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

*Felsher*, 755 N.E.2d at 598 (citations omitted). While this passage implies that Indiana courts take a rather liberal approach of allowing one to make a claim of unfair competition, in reality, the activities leading to a claim for unfair competition are the activities mentioned above, namely, price-cutting, "passing off," and in the insurance field. Indiana courts have not recognized a claim for

8

unfair competition where one party to a contract takes actions that preclude another party to the contract from collecting administrative fees, and this Court declines IWDC's invitation to so extend this doctrine. IWDC has not pled price-cutting, nor has it pled that Air Liquide is passing off IWDC's products or image as its own. Further, unfair competition law as it applies to insurance is also inapplicable in this case. The Court finds that IWDC has failed to pled facts sufficient to state a claim upon which relief may be granted; therefore, Air Liquide's Motion to Dismiss as to this claim is **GRANTED**.

IWDC requests that the Court grant it leave to amend its Ans./Counterclaim under Rule 15(a). "A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile . . . ." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (citing *DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir. 1992). "[F]utile repleadings include restating the same facts using different language . . . ." *Id.* The Court finds that any repleading with respect to this claim would simply involve restating the facts in a different way, thus making the repleading futile. Therefore, the Court **DENIES** IWDC's request for leave to amend.

## IV.   CONCLUSION

For the reasons stated herein, counterclaim defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is hereby **GRANTED in part and DENIED in part.** Counterclaim plaintiff's request for leave to amend is **DENIED**.  The Court **ORDERS** counterclaim defendant to file an answer to the counterclaims within ten days.

IT IS SO ORDERED this 4th day of August, 2006.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed to:

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

Jeffrey D. Featherstun
PLEWS SHADLEY RACHER & BRAUN
jfeather@psrb.com

Arthur James Howe
SCHOPF & WEISS LLP
howe@sw.com

Robert John Palmersheim
SCHOPF & WEISS LLP
palmersheim@sw.com

Brian Edward Bailey
ICE MILLER LLP
brian.bailey@icemiller.com

Melanie E. Harris
ICE MILLER LLP
melanie.harris@icemiller.com

Kevin M. Kearney
HODGSON RUSS LLP
kkearney@hodgsonruss.com

Jeffrey Charles Stravino
HODGSON RUSS LLP
jeff_stravino@hodgsonruss.com