UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AIR LIQUIDE AMERICA LP, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|      vs. ) | CAUSE NO.  1:05-cv-1044-LJM-WTL |
| ) | |
| INDEPENDENT WELDING DISTRIBUTOR ) | |
| COOPERATIVE, INC., ) | |
| ) | |
|    Defendant. ) | |

### ENTRY ON MOTION TO COMPEL

This cause is before the Magistrate Judge on the motion to compel filed by Defendant Independent Welding Distributor Cooperative, Inc. ("IWDC").  The motion is fully briefed, and the Magistrate Judge, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.

This case arises out of a 2002 contract ("Master Agreement") between IWDC, a cooperative of approximately 150 Member-Owners who are in the welding industry, and MG Industries, a supplier of gases used in welding.  Pursuant to the Master Agreement, IWDC Member-Owners who entered into a Supply Agreement with MG Industries could purchase welding gases from MG Industries at a fixed price for three years.  Invoicing and payments for the gas purchased were to be processed by IWDC, which in turn would receive an administrative fee.  The Master Agreement called for the imposition of a surcharge if the Member-Owners failed to purchase minimum volumes of each gas.

Plaintiff Air Liquide America LP ("Air Liquide") purchased MG Industries in 2004 and assumed MG Industries' rights and obligations under the Master Agreement.  A dispute had previously arisen between IWDC and MG Industries regarding the terms and obligations due

under the Master Agreement,[1] and the dispute remained unresolved at the time of Air Liquide's purchase. No invoices for surcharges under the Master Agreement were issued by MG Industries; in April 2005, Air Liquide issued invoices for the surcharges it asserted were owed. IWDC disputed the propriety of the surcharges and did not remit payment, asserting that any failure to purchase the minimum quantities of gasses was caused by MG Industries' inability to supply gasses in sufficient quantities or acceptable quality. This lawsuit ensued.

At issue in the instant motion is IWDC's document request seeking:

All Documents concerning the Master Agreement or any Supply Master Agreement, including without limitation Documents concerning:

(a) the negotiation or drafting of the Agreement;

(b) communications between Air Liquide and MG; and

(c) communications between the Parties, MG, and/or any Member-Owner.

IWDC asserts that Air Liquide has failed to produce emails and communications to, from and between MG Industries employees from September 2001 to January 2005 and files of MG Industries employees relating to Master Agreement. IWDC argues that these documents are relevant because they

> will provide further information about several important facts in this case, including, but not limited to: MG's internal communications during the negotiating and drafting of the Master Agreement; MG's decision not to issue invoices to IWDC; communications between MG and non-parties concerning

---

[1] IWDC describes the dispute as follows: "MG and IWDC both acknowledged that the Agreement set forth unrealistic terms that were too ambitious given the market and given MG's ability or inability to supply the quality and quantity of gas requested. . . . As such, they engaged in negotiations to amend the Agreement that forgave surcharges for the first two years under the Agreement in exchange for extending the duration of, adjusting the volumes of gases under, and decreasing IWDC's commission pursuant to the Agreement." Air Liquide states simply that "payment of surcharges was not sought because the parties were discussing potential amendments to the Agreement."

> problems with supply and quality of the product that arose from March 26, 2002 through December 31, 2004; whether or not MG and Air Liquide realized the ambiguity of the terms in the Master Agreement; and the extent to which Member-Owners knew about MG's inability to meet its delivery obligations. The requested evidence will also help determine the damages, if any.

IWDC's motion focuses mostly on Air Liquide's failure to produce emails between MG Industries employees discussing the Master Agreement. Air Liquide asserts that it has produced all non-privileged responsive emails and documents that are in its possession or control, and that the emails IWDC seeks, to the extent that they ever existed, are no longer available because they were contained on three servers that were replaced by Air Liquide in May 2005.

The first issue presented by IWDC's motion is whether Air Liquide's search for emails and other documents satisfies its obligation under the Federal Rules of Civil Procedure. While Air Liquide's initial efforts were lacking, at the suggestion of the Magistrate Judge during a telephonic status conference Air Liquide took additional steps to determine whether any relevant emails or other documents still exist. These steps include hiring a forensic consultant to retrieve any responsive documents from the laptop that was used by George Golliday, a former Air Liquide employee who was actively involved in negotiating and drafting the Master Agreement, and tracking down additional information regarding the three servers that were replaced in May 2005. Specifically, Air Liquide determined that those servers were not destroyed, as it originally believed, but rather are still being used by GT&S, Inc., a "spin-off" company that was formed by former executives of MG Industries at the time of Air Liquide's purchase. Air Liquide further determined that in May 2005 the emails of former MG Industries employees who had not become employees of GT&S, Inc., were removed from the servers to (1) free up space and (2) protect the proprietary information of GS Industries, which now belonged to Air Liquide. Air Liquide also determined that back-up tapes that contain emails from 2001 and 2003-2005 still

exist, although it does not have the software required to restore the data on all of the tapes.

It appears that the parties are working with consultants to determine what the cost of retrieving the data from the back-up tapes would be. It is not clear to the Magistrate Judge what, if any, additional measures IWDC believes Air Liquide should take to search for additional electronic documents. In its Reply, IWDC argues that Air Liquide's efforts at searching for responsive documents still fall short because "it has only sought documents from current Air Liquide employees, thereby narrowing the search to a small subset of those who may have relevant documents" and it "has restricted former MG employees from producing MG documents upon signing separation agreements." The Magistrate Judge is not sure what this means and what additional steps IWDC would have Air Liquide take at this point. If Air Liquide has documents from these former employees, it is the Magistrate Judge's understanding that those already have been (or are in the process of being) searched for and produced. There is no showing that Air Liquide has any control over the former employees such that it should be required to obtain documents from them (to the extent that the former employees might still have responsive documents in their possession); nor does it appear that IWDC has attempted to obtain documents from the former employees via non-party document requests. The Magistrate Judge believes that Air Liquide understands that it is required to search for and produce any responsive, non-privileged document, whether in electronic or paper form, that is in its possession or control.

IWDC also complains that Air Liquide "has not employed professionals familiar with searching computers, hard-drives, back-ups, and electronic files, including e-mail files." IWDC is correct that it is not sufficient to simply ask employees to produce documents that they are aware of, whether those documents are electronic or paper. A party must perform a reasonable

search for responsive documents.  For paper documents, that would include such things as searching relevant archived files; searching servers and the hard-drives of relevant computers would be the equivalent obligation for electronic documents.  If Air Liquide has not done so already, it shall have a qualified information technology specialist perform the appropriate searches; it shall file an affidavit setting forth in detail what steps it has taken to search for electronic documents, including what was searched and what search terms were used, **within 21 days of the date of this Entry**.

IWDC also suggests that Air Liquide has improperly withheld documents on privilege grounds and suggests that "it is up to the Court, after Air Liquide specifies the particular reason why each document is privileged and pursuant to an *in camera* review, to make a document-by-document determination that the communication is privileged."  To the extent that IWDC suggests that the *in camera* review process is used as a matter of course to resolve privilege issues, it is incorrect; indeed, it would be more accurate to call it a last resort, although one that the Court certainly will utilize if necessary.  However, first Air Liquide must specifically identify each document it has withheld on privilege grounds on a privilege log and explain the grounds for its claim of privilege.  Further, as IWDC suggests, the attorney-client privilege does not attach to communications with an attorney to the extent that the attorney was acting as an executive rather than as legal counsel; therefore, Air Liquide should take care to ensure that it claims attorney-client privilege only for those documents that actually consist of the giving or receiving of legal advice.

Finally, IWDC argues that Air Liquide should be sanctioned for spoliation of evidence because it "ordered GT&S to destroy [] evidence just two months prior to commencing this action."  While IWDC would like for the Court to infer that Air Liquide seized the chance to get

rid of highly relevant and presumably inculpatory information on the servers just before it filed this lawsuit, there is no indication that the deletion of emails and other documents from the servers was anything more than Air Liquide says it was – a routine business decision to remove its information from the servers so that it could not be accessed by GT&S, Inc., and so that GT&S, Inc., would have room on the servers for its own information.  There is no basis for a finding of spoliation at this time.

Finally, IWDC's request for the costs it incurred in filing this motion is deferred to the conclusion of this litigation.

SO ORDERED:  01/31/2007

*William T. Lawrence*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to:

Adam Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

Brian Edward Bailey
ICE MILLER LLP
brian.bailey@icemiller.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

Jeffrey D. Featherstun
PLEWS SHADLEY RACHER & BRAUN
jfeather@psrb.com

Nicholas A. Gowen
SCHOPF & WEISS, LLP
gowen@sw.com

Melanie E. Harris
ICE MILLER LLP
melanie.harris@icemiller.com

Arthur James Howe
SCHOPF & WEISS LLP
howe@sw.com

Robert John Palmersheim
SCHOPF & WEISS LLP
palmersheim@sw.com

Jeffrey Charles Stravino
HODGSON RUSS LLP
jeff_stravino@hodgsonruss.com